1  RONALD RUS, #67369
   rrus@rusmiliband.com
2  JAME P. MASCARO, #209773
   jmascaro@rusmiliband.com
3  RUS, MILIBAND & SMITH
   A Professional Corporation
4  Seventh Floor
   2211 Michelson Drive
5  Irvine, California 92612
   Telephone:  (949) 752-7100
6  Facsimile:  (949) 252-1514

7  Attorneys for Parties in Interest ANTHEM VENTURES, LLC
   and ANTHEM VENTURES INTERNATIONAL LLC

8

9          UNITED STATES BANKRUPTCY COURT

10     CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY

| 11 | In re: | ) | Case No. 09-13903 GM |
|----|--------|---|----------------------|
| 12 | | ) | Chapter 11 |
| 13 | DEAN BORNSTEIN, | ) | **EMERGENCY MOTION TO DISMISS** |
| 14 | Debtor. | ) | **OR, ALTERNATIVELY, CONVERT CASE TO ONE UNDER CHAPTER 7** |
| 15 | | ) | **PURSUANT TO 11 U.S.C. § 1112(b); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF** |
| 16 | | ) | **JAME P. MASCARO IN SUPPORT** |

17                                      [DATE AND TIME OF HEARING TO
                                        BE DETERMINED BY THE COURT]
18

19

20

21

22

23

24

25

26

27

28

                              1

1  TO THE HONORABLE GERALDINE MUND, UNITED STATES BANKRUPTCY COURT

2  JUDGE, DEBTOR DEAN BORNSTEIN AND HIS ATTORNEYS OF RECORD, AND ALL

3  INTERESTED PARTIES:

4          Parties in Interest Anthem Ventures, LLC and Anthem Ventures International

5  LLC (collectively, "Parties in Interest" or "Anthem") hereby move and respectfully request

6  that the Court immediately dismiss the above-referenced Chapter 11 case or, alternatively,

7  convert the Chapter 11 case to a case under Chapter 7 pursuant to 11 U.S.C. § 1112(b) for the

8  reasons set forth herein:

9  1.    <u>INTRODUCTION</u>

10          Every conceivable badge of bad faith and fraud exists in this case.  Dean

11  Bornstein is a professional con man.  This "involuntary" case is collusive, a manipulation of

12  the system and ought to be immediately dismissed.  A few of the facts surrounding this filing

13  include:

14           •    In May 2006, Anthem sued Bornstein for fraud in connection with one of

15                  Bornstein's phony film projects;

16           •    With no legitimate defense available to him, Bornstein, represented by

17                  attorney Paul Beck, allowed judgment in favor of Anthem in the amount

18                  of $407,160 in January 2008;

19           •    In March 2008, Anthem sued Bornstein his attorney, Paul Beck, and

20                  others incident to the fraudulent conveyance of virtually all of

21                  Bornstein's assets, including various film projects which were conveyed

22                  to Empire Film Group.  Bornstein is the primary stockholder in "publicly

23                  traded" Empire Film Group (as well as other phony companies) which he

24                  uses to defraud potential investors through www.empirefilmgroup.com

25                  and other public forums;

26           •    In December 2007, and just days before entry of Anthem's judgment,

27                  Bornstein refinanced his Malibu property, thereby putting all equity

28                  beyond the reach of his creditors;

2

1        •    On April 6, 2009, this involuntary Chapter 11 case was commenced by

2     Joseph R. Cellura who claims to hold a promissory note from Mr.

3     Bornstein;

4        •    The morning after the "involuntary" petition was filed, the Los Angeles

5     County Superior Court was to order Bornstein to turn over his Empire

6     Film Group stock to Anthem;

7        •    Mr. Bornstein is not a citizen of the United States, though he lives here

8     permanently, but has not filed tax returns in five years, has no regular

9     source of income, has over $45,000 in monthly expenses, and is facing

10     foreclosure on his Malibu residence.  That foreclosure sale was

11     scheduled for April 8, 2009;

12        •    Attorney Paul A. Beck, who represents Bornstein in the Anthem State

13     Court actions, and who has been sued by Anthem for being the recipient

14     of a fraudulent conveyance from Bornstein, has also represented the

15     single petitioning creditor;

16        •    In 2002, Mr. Cellura and Bornstein's attorney, Mr. Beck, were sued in

17     the State Court for conspiring to defraud an elderly couple in connection

18     with a prior Chapter 11 case.

19         As explained in more detail below, these are only a few facts related to the

20 scheming Bornstein.  This trumped up involuntary filing was devised only to keep his many

21 defrauded "investors" at bay.  Bornstein, secretly with his attorney Mr. Beck, and the single

22 petitioning creditor, Mr. Cellura, have invoked the automatic stay in an effort to forestall

23 Anthem's effort to collect on its judgment, while leaving Bornstein free to further secret his

24 assets.  This Chapter 11 bankruptcy case (or the involuntary petition) should be dismissed

25 immediately or adjudicated and converted to a case under Chapter 7, because it was filed in bad

26 faith.  *In re Mi La Sul,* 380 B.R. 546 (Bankr. C.D. Cal. 2007).  Indeed, Anthem reasonably

27 believes that if this case is not immediately dismissed or converted, Bornstein will

28 / / /

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EMERGENCY MOTION TO DISMISS OR CONVERT CASE

1 use the gap period to further hinder, delay and defraud his creditors by transferring his stock in

2 Empire Film Group and absconding with any proceeds to the detriment of his creditors.

3 2.    <u>STATEMENT OF FACTS</u>

4          On May 18, 2006, Anthem commenced *Anthem Ventures, etc., et al. v. Dean*

5 *Bornstein, etc., et al.*, Los Angeles Superior Court Case No. NC038453 ("Anthem I") by

6 filing a complaint against Bornstein alleging, *inter alia*, causes of action for fraud arising from

7 Anthem's payment of $500,900 to Bornstein in exchange for stock in a film production

8 company Bornstein claimed to own and control.  A true and correct copy of Anthem's

9 complaint in Anthem I is attached to the Declaration of Jame P. Mascaro ("Mascaro Decl.") as

10 Exhibit "1."

11          In September 2007, Bornstein orchestrated a transfer of his interest in several

12 film projects and other companies to Empire Film Group, Inc. in exchange for several million

13 shares of stock.   See Mascaro Decl., Exhibit "2."  According to documents recently produced

14 by Bornstein's accountants pursuant to subpoena, Bornstein valued the films at over

15 $31,000,000.  See Mascaro Decl., Exhibit "3."

16          In December 2007, Bornstein put his Malibu property beyond the reach of his

17 judgment creditors by refinancing the property.  Through documents subpoenaed from a third

18 party, Anthem discovered that Bornstein's refinancing allowed him to abscond with several

19 thousand dollars, to the detriment of his creditors.  See Mascaro Decl., Exhibit "4."

20          On January 2, 2008, the Superior Court for the State of California, County of

21 Los Angeles, entered judgment for Anthem against Bornstein in Anthem I ("State Court

22 Judgment").  A true and correct copy of the State Court Judgment is attached to the Mascaro

23 Decl. as Exhibit "5."

24          In March 2008, Anthem commenced a fraudulent transfer action against

25 Bornstein and others to recover the fraudulent transfers he made in September 2007 entitled

26 *Anthem Ventures, LLC et al. v. Empire Film Group, Inc. et al.*  Case No. NC05000 ("Anthem

27 II").  A true and correct copy of Anthem's Second Amended Complaint filed in Anthem II is

28 attached to the Mascaro Decl. as Exhibit "6."

4

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EMERGENCY MOTION TO DISMISS OR CONVERT CASE

1        Since entry of the State Court Judgment, Anthem has made numerous attempts

2    to enforce its judgment.  Specifically, Anthem sought a sheriff's sale against real property

3    owned by Bornstein in Malibu, California.  However, after conducting due diligence, it became

4    apparent that Bornstein's property was significantly over-encumbered as a result of the

5    financing he arranged just a few months earlier in December 2007 (and just days before entry

6    of the State Court Judgment).  As a result, Anthem was unable to complete the forced sale.

7    However, during the ensuing months, Bornstein defaulted on his refinancing and foreclosure

8    proceedings were commenced.  Apparently Bornstein's over-encumbered Malibu residence was

9    scheduled to be sold at a foreclosure sale on April 8, 2009, just two days after this case was

10    commenced.

11        On December 8, 2008, Anthem conducted Bornstein's judgment debtor

12    examination.  During the course of the examination, Bornstein generally testified that he had no

13    regular source of income, was delinquent on his mortgage for his Malibu estate, had over

14    $45,000 in monthly living expenses, and has not filed tax returns for *five years*:

15        Q    Have you filed federal income tax returns in the past five
        years?
16

17        MR. COHON:  I'm going to object as invading the witness' right
        to privacy.

18        But you can answer that question subject to that objection.

19        THE WITNESS:  I don't know what that means.

20        MR. COHON:  It means you can answer "Yes" or "No."

21        THE WITNESS:  No.

22        Q    BY MR. SMITH:  Have you filed state income tax returns
        in the past five years?
23

24        MR. COHON:  Objection on the grounds of privacy.

25        But subject to that objection, you can answer the question.

        THE WITNESS:  No.
26

27        Q    BY MR. SMITH:  Is there a reason why you haven't filed
        any tax returns in the past five years?

28        MR. COHON:  I think that because that could potentially expose

5

1  the witness to more than civil liability, I think he should take the
   5th Amendment on that ground.

2
          So I would instruct him to assert the 5th Amendment as
3  the answer to that question.

4  MR. SMITH:  I don't think you can do that for him, so I don't
   want to stand on --

5
   MR. COHON:  He has to adopt that for himself.
6  THE WITNESS:  I take the 5th Amendment.[1]

7  Transcript of Judgment Debtor Examination of Dean Bornstein, Long Beach, California

8  December 10, 2008 ("JDE Transcript"), p. 114, l. 5 to p. 115, l. 8.  A true and correct copy

9  of the JDE Transcript is attached to the Mascaro Decl. as Exhibit "7."

10         Bornstein also testified that he owned three to four million shares of stock in

11  Empire Film Group, Inc., that those shares were worth approximately $.45 per share, had a 52

12  week range of value between $.20 and $3.85, and that the certificate(s) representing those

13  shares were in the possession of his corporate counsel, Spectrum Law Group, LLP.  Bornstein

14  also testified that he owns a "holding company" named DB Accessions, LLC which owns

15  approximately 40 million shares of Empire Film Group stock.

16         As a result of that testimony, Anthem reasonably believes that Bornstein has no

17  valuable assets other than his controlling interest in the stock of Empire Film Group.  The

18  assets of Empire Film Group consist almost entirely of Mr. Bornstein's personal interests in

19  film projects which he valued at over $31,000,000 before he transferred them to Empire Film

20  Group.

21         Following Bornstein's judgment debtor examination, Anthem began proceedings

22  to levy and sell Bornstein's Empire Film Group stock to satisfy the State Court Judgment.

23  Anthem was able to effect a levy upon stock certificates for approximately two hundred

24  seventeen thousand (217,000) shares, and sought an order from the state court to require

25  / / /

26

27  [1] The import of this is obvious.  Even if this "involuntary" case was not collusive the Debtor will be unable or
28  unwilling to comply with the most fundamental of financial disclosures required under the Code or by the U.S.
    Trustee's guidelines.

6

1    Bornstein to turn over the remainder of his shares to the Los Angeles County Sheriff for sale.

2    The hearing on the turnover request was scheduled for April 7, 2009.

3          At 8:30 a.m. on the morning of April 7, 2009, Bornstein's counsel, Paul A.

4    Beck, appeared in state court in Long Beach with a file stamped copy of a notice of stay he had

5    filed, with a copy of the involuntary petition, which had been filed only hours earlier in Los

6    Angeles.[2]

7          Anthem immediately questioned whether the involuntary petition had been

8    commenced in good faith. As suspected, Anthem discovered that Mr. Beck was well

9    acquainted with the single petitioning creditor, Joseph R. Cellura. In 2004, Mr. Beck was

10    sued, for colluding with Mr. Cellura, to defraud an elderly couple in connection with a prior

11    Chapter 11 case in *Molus et al. v. Ben-Zvi & Beck, LLP et al.*, Orange County Superior Court

12    Case No. 04CC08612. A true and correct copy of the complaint filed in the *Molus* case is

13    attached to the Mascaro Decl. as Exhibit "8."

14          Anthem reasonably believes that the Debtor colluded with Mr. Cellura to

15    commence this case in hopes of obtaining additional time that would have otherwise not been

16    available through the Debtor's filing of a voluntary petition, to consummate the sale or

17    refinance of his real property and, a further secretion or fraudulent transfer of his stock in

18    Empire Film Group, leaving his legitimate creditors with an empty bag.

19          In sum, the Debtor should not be afforded the benefit of managing his own

20    affairs under the protection of the "involuntary" petition while he is free of the burdens of

21    reporting and restrictions on the use of his assets. Maintaining this case puts Mr. Bornstein's

22    creditors at significantly greater risk than if no bankruptcy had been filed. If a bankruptcy case

23    is to remain, the indisputable facts demonstrate that the estate's assets should be managed by a

24    trustee in chapter 7.

25

26

27

28

---

[2]   Although it may seem insignificant, the Court should also note that the Involuntary Petition includes the last four digits of the Debtor's social security number. In the judgment debtor proceedings, the Debtor had vehemently refused to provide those numbers to Parties in Interest requiring the appointment of a referee who had recommended that the Court order the number be divulged, yet the petitioning creditor had the numbers readily available to include with his remarkably timed "involuntary" petition.

7

3.    ARGUMENT

The Bankruptcy Code authorizes dismissal of a Chapter 11 case for cause. Specifically, Section 1112(b) provides as follows:

> (b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

According to the Legislative history of 11 U.S.C. § 1112, the examples of cause listed in the statute are not exhaustive. H.R. Rep. 595, 95th Cong., 1st Sess. 406 (1977). Indeed, bankruptcy courts have broad discretion to dismiss a Chapter 11 petition for anything which may be considered good cause. See *Pioneer Liquidating Corp. v. United States Trustee*, 248 B.R. 368, 375 (9th Cir. B.A.P. 2000). The overriding consideration in all cases is the best interests of the creditors. "Although section 1112(b) does not explicitly require that cases be filed in 'good faith,' courts have *overwhelmingly* held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal." *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994) (emphasis added).

The Court in *Marsch* further held that the test for determining good faith depends on an "amalgam" of factors and not upon any specific fact. The Ninth Circuit further held in *Marsch* that the "[t]he test [for good faith] is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis." *Id* at 828.

"[E]vidence of *an intent to cause hardship or delay to creditors by resorting to the Chapter 11 device, merely for the purpose of invoking the automatic stay without an intent or ability to reorganize financial activities, is an abuse of the reorganization process*" which is considered sufficient cause upon which a case may be dismissed. *In re 2218 Bluebird Limited Partnership*, 41 B.R. 540, 542-543 (Bankr. S.D. Cal. 1984) (emphasis added).

/ / /

8

1    Indeed, a finding that a Chapter 11 petition was filed in bad faith may justify its

2  dismissal or conversion *without more*.  *Chu v. Syntron Bioresearch, Inc.*, 253 B.R. 92, 95

3  (S.D. Cal. 2000).  Indeed, once the Court determines that a Chapter 11 petition was filed in

4  bad faith, it is *inappropriate* to allow the case to proceed and dismissal or conversion is

5  *required*.  *In re Silberkraus*, 253 B.R. 890, 903 (Bankr. C.D. Cal. 2000).

6          *The burden of demonstrating a lack of bad faith ultimately rests upon the*

7  *debtor*.  *In re Silberkraus, supra* at 902.[3/]  Once a debtor's good faith has been put into

8  question, the debtor then bears the burden of proving good faith necessary to prevent dismissal

9  or conversion.  *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 985 (Bankr. N.D.N.Y.

10 1988); *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995).  In conducting

11 this evaluation, the court should take into account all of the facts and circumstances leading up

12 to the filing of the case, and the conduct of the debtor during the case to determine whether bad

13 faith exists.

14          In a non-exclusive list of factors which are relevant to determining bad faith, the

15 *Chu* court offered the following:

16          Several of the recurrent factors that often accompany bad faith
            bankruptcy filings include: (1) the debtor has one asset; (2) the
17          debtor was involved in improper pre-petition conduct; (3) the
            debtor can identify only a few unsecured creditors; (4) the
18          debtor's property has been posted for foreclosure, and the debtor
            has been unsuccessful in defending against the foreclosure in state
19          court; (5) the debtor and a single creditor proceeded to a standstill
            in state court litigation, and the debtor has lost or has been
20          required to post a bond which it cannot afford; (6) the filing of the
            petition effectively allows the debtor to evade court orders; (7) the
21          debtor has no ongoing business or employees; and (8) the lack of
            possibility of reorganization....*There is no bright line, talismanic*
22          *number of factors which must exist to find bad faith*."

23 *Chu, supra* at 95 (citations omitted, emphasis added).

24          Many cases hold that it constitutes bad faith to file a bankruptcy petition in order

25 to impede, delay, forum shop *or* obtain a tactical advantage regarding litigation ongoing in a

26 non-bankruptcy forum.  For instance, in *Chinichian v. Campolongo*, 784 F.2d 1440 (9th Cir.

27 _____

28    [3/]    Here the petitioning creditor's lack of bona fide is called to question for it is his collusive history with
Mr. Beck that makes his motives glaringly suspect.

9

1  1986), the Ninth Circuit affirmed the lower court's ruling that the debtor acted in bad faith in

2  filing bankruptcy litigation solely to defeat a pending action for specific performance in

3  connection with a purchase/sale contract relating to the debtor's personal residence.

4         In *Marsch, supra,* the Ninth Circuit affirmed the bankruptcy court's dismissal

5  of a Chapter 11 case for bad faith under circumstances similar to the facts of this case.

6  Specifically, in *Marsch,* the bankruptcy court found that the debtor's bankruptcy petition was

7  filed solely to delay collection of a restitution judgment and to avoid posting an appeal bond

8  because the debtor had the financial means to pay the judgment or post a bond. *Id.* at 829.

9         Indeed, in *In re Mi La Sul,* 380 B.R. 546, 544-555 (Bankr. C.D. Cal. 2007),

10  this court properly decided to dismiss an involuntary petition after the court determined that the

11  petition was filed in bad faith as a result of collusion between the debtor and a petitioning

12  creditor:

13              In general, motions to dismiss involuntary petitions are
              brought by the alleged debtor. But the bankruptcy court need not
14            wait for the alleged debtor to act. This is particularly true in a
              collusive filing between the alleged debtor and the petitioning
15            creditor(s), since the alleged debtor certainly will not seek
              sanctions or to dismiss. Assuming that the petition is ever served,
16            the alleged debtor would likely stipulate to entry of the order for
              relief or may merely fail to answer and allow the order for relief
17            to be entered by default. Or the petitioning creditor may never
              serve the summons, since the petitioning creditor obtained the
18            desired time and no longer cares if the case is dismissed.
              Alternatively, the burden is placed on the foreclosing secured
19            creditor to seek and obtain relief from the automatic stay and,
              perhaps after several filings by or against different individuals
20            affecting a single property, put an end to the farce by obtaining an
              order under 11 USC § 362(d)(4).

21              The court need not defer to the alleged debtor or another
22            creditor, but can act on its own:

23                 It is proper for the Court to inquire to what extent
                 the Debtor is involved in the institution of an
24                 involuntary case and if it appears there was
                 collusion between the Debtor and the petitioning
25                 creditors, and they fraudulently invoked the
                 jurisdiction of the Court, the Court will not tolerate
26                 the maintenance of an involuntary petition. *In re
                 Winn,* 49 B.R. 237, 239 (Bankr.M.D.Fla.1985),
27                 quoted with approval in *F.D.I.C. v. Cortez (In re
                 Cortez),* 96 F.3d 50, 51 (2d Cir.1996).

28

10

1 | *In re Mi La Sul,* 380 B.R. 546, 544-555 (Bankr. C.D. Cal. 2007).

2 |  In this case, there is more than ample cause to dismiss, including the

3 | circumstances surrounding the filing of this case, and the Debtor's long history of fraudulent

4 | conduct.  This case should be dismissed because it was filed in bad faith as a result of collusion

5 | between the Debtor and the single petitioning creditor, and there is no hope of reorganization.

6 | Not only was this case commenced as a result of collusion between the Debtor and his single

7 | petitioning creditor, this case was filed in bad faith to avoid foreclosure and other collection

8 | efforts against him.  Additionally, this Debtor's long history of fraudulent and improper

9 | conduct prohibits him from the protection of Chapter 11.

10 | 4.    <u>CONCLUSION</u>

11 |  For all the foregoing reasons, Anthem respectfully requests that the Court grant

12 | this Motion and immediately dismiss this case, or alternatively, convert this case to Chapter 7.

14 | DATED: May 5, 2009

RUS, MILIBAND & SMITH
A Professional Corporation

By:_____
RONALD RUS
Attorneys for Parties in Interest ANTHEM
VENTURES, LLC and ANTHEM
VENTURES INTERNATIONAL LLC

11

367677v1 jpm 5/5/09 35 (2680-0003)

## DECLARATION OF JAME P. MASCARO

I, JAME P. MASCARO, declare as follows:

1.      I am an attorney at law duly licensed to practice before the above-entitled Court, and associate of the law firm of Rus, Miliband & Smith, A Professional Corporation, attorneys of record for Parties in Interest Anthem Ventures, LLC and Anthem Ventures International LLC (collectively, "Parties in Interest" or "Anthem"). I have firsthand personal knowledge of the matters set forth herein, and if called upon to testify, would and could competently testify thereto.

2.      On May 18, 2006, Anthem commenced *Anthem Ventures, etc., et al. v. Dean Bornstein, etc., et al.*, Los Angeles Superior Court Case No. NC038453 ("Anthem I") by filing a complaint against Dean Bornstein alleging, *inter alia*, causes of action for fraud arising from Anthem's payment of $500,900 to Bornstein in exchange for stock in a film production company Bornstein claimed to own and control. A true and correct copy of Anthem's complaint in Anthem I is attached hereto as Exhibit "1."

3.      Attached hereto as Exhibits "2" and "3" are documents recently produced by Bornstein's accountants pursuant to subpoena. These documents reveal that in September 2007, Bornstein orchestrated a transfer of his interest in several film projects and other companies to Empire Film Group, Inc. in exchange for several million shares of stock. According to the same documents, Bornstein valued these films at over $31,000,000.

4.      In December 2007, Bornstein refinanced his Malibu property. According to documents produced by third parties pursuant to subpoena in Anthem II, true and correct copies of which are attached hereto as Exhibit "4," Bornstein took several thousand dollars in cash from the refinancing and transferred thousands of dollars in proceeds to other recipients.

5.      On January 2, 2008, the Superior Court for the State of California, County of Los Angeles, entered judgment for Anthem against Bornstein in Anthem I ("State

/ / /

12

1    Court Judgment"). A true and correct copy of the State Court Judgment is attached hereto as

2    Exhibit "5."

3            6.      In March 2008, Anthem commenced a fraudulent transfer action against

4    Bornstein and others to recover the fraudulent transfers he made in September 2007 entitled

5    *Anthem Ventures, LLC et al. v. Empire Film Group, Inc. et al.* Case No. NC05000 ("Anthem

6    II"). A true and correct copy of Anthem's Second Amended Complaint in Anthem II is

7    attached hereto as Exhibit "6."

8            7.      Since entry of the State Court Judgment, Anthem has made numerous

9    attempts to enforce its judgment. Specifically, Anthem sought a sheriff's sale against real

10   property owned by Bornstein in Malibu, California. However, after conducting due diligence,

11   it became apparent that Bornstein's property was significantly over-encumbered as a result of

12   the financing he arranged just a few months earlier in December 2007 (and just days before

13   entry of the State Court Judgment). As a result, Anthem was unable to complete the forced

14   sale. However, I am informed and believe that during the ensuing months, Bornstein defaulted

15   on his refinancing and foreclosure proceedings were commenced. Apparently Bornstein's

16   over-encumbered Malibu residence was scheduled to be sold at a foreclosure sale on April 8,

17   2009, just two days after this case was commenced.

18           8.      On December 8, 2008, Anthem conducted Bornstein's judgment debtor

19   examination. During the course of the examination, Bornstein generally testified that he had no

20   regular source of income, was delinquent on his mortgage for his Malibu estate, had over

21   $45,000 in monthly living expenses, and has not filed tax returns for five years. A true and

22   correct copy of the Transcript of Judgment Debtor Examination of Dean Bornstein, Long

23   Beach, California December 10, 2008 is attached hereto as Exhibit "7."

24           9.      Bornstein also testified that he owned three to four million shares of

25   stock in Empire Film Group, Inc., that those shares were worth approximately $.45 per share,

26   had a 52 week range of value between $.20 and $3.85, and that the certificate(s) representing

27   those shares were in the possession of his corporate counsel, Spectrum Law Group, LLP.

28

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EMERGENCY MOTION TO DISMISS OR CONVERT CASE

1  Bornstein also testified that he owns a "holding company" named DB Accessions, LLC which

2  owns approximately 40 million shares of Empire Film Group stock.

3          10.    As a result of that testimony, Anthem reasonably believes that Bornstein

4  has no valuable assets other than his controlling interest in the stock of Empire Film Group.

5  The assets of Empire Film Group consist almost entirely of Mr. Bornstein's personal interests

6  in film projects which he valued at over $31,000,000 before he transferred them to Empire

7  Film Group.

8          11.    Following Bornstein's judgment debtor examination, Anthem began

9  proceedings to levy and sell Bornstein's Empire Film Group stock to satisfy the State Court

10  Judgment. Anthem was able to effect a levy upon stock certificates for approximately two

11  hundred seventeen thousand (217,000) shares, and sought an order from the state court to

12  require Bornstein to turn over the remainder of his shares to the Los Angeles County Sheriff

13  for sale. The hearing on the turnover request was scheduled for April 7, 2009.

14          12.    I am informed by attending counsel and therefore believe that at 8:30

15  a.m. on the morning of April 7, 2009, Bornstein's counsel, Paul A. Beck, appeared in state

16  court in Long Beach with a file stamped copy of a notice of stay he had filed, with a copy of

17  the involuntary petition, which had been filed only hours earlier in Los Angeles.

18          13.    Anthem immediately questioned whether the involuntary petition had

19  been commenced in good faith. As suspected, Anthem discovered that in 2004, Mr. Beck was

20  sued, for colluding with Mr. Cellura, to defraud an elderly couple in connection with a prior

21  Chapter 11 case in *Molus et al. v. Ben-Zvi & Beck, LLP et al.*, Orange County Superior Court

22  Case No. 04CC08612. A true and correct copy of the complaint filed in the *Molus* case is

23  attached hereto as Ex. "8."

24          14.    Anthem reasonably believes that the Debtor colluded with Mr. Cellura to

25  commence this case in hopes of obtaining additional time that would have otherwise not been

26  available through the Debtor's filing of a voluntary petition, to consummate the sale or

27  refinance of his real property and, a further secretion or fraudulent transfer of his stock in

28  Empire Film Group, leaving his legitimate creditors with an empty bag.

14

15.     In sum, Anthem respectfully submits that the Debtor should not be afforded the benefit of managing his own affairs under the protection of the "involuntary" petition while he is free of the burdens of reporting and restrictions on the use of his assets. Anthem believes that maintaining this case puts Bornstein's creditors at significantly greater risk than if no bankruptcy had been filed. If a bankruptcy case is to remain, the indisputable facts demonstrate that the estate's assets should be managed by a trustee in chapter 7.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of May 2009 at Irvine, California.

JAME P. MASCARO

367677v1 jpm 5/5/09 35 (2680-0003)

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EMERGENCY MOTION TO DISMISS OR CONVERT CASE

1   RONALD RUS, #67369
    rrus@rusmiliband.com
2   JOEL S. MILIBAND, #77438
    jmiliband@rusmiliband.com
3   LEO J. PRESIADO, #166721
    lpresiado@rusmiliband.com
4   RUS, MILIBAND & SMITH
    A Professional Corporation
5   Seventh Floor
    2600 Michelson Drive
6   Irvine, California 92612
    Telephone: (949) 752-7100
7   Facsimile: (949) 252-1514

8   Attorneys for Plaintiffs ANTHEM VENTURES, LLC
    and ANTHEM VENTURES INTERNATIONAL, LLC

*CASE MANAGEMENT CONFERENCE SET FOR 8:30 a.m.*
*OCT 1 6 2006*
*IN DEPARTMENT*

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

MAY 19 2006

John A. Clarke, Executive Officer/Clerk

By_____, Deputy

10   SUPERIOR COURT OF THE STATE OF CALIFORNIA

11   COUNTY OF LOS ANGELES, SOUTH DISTRICT

| | |
|---|---|
| ANTHEM VENTURES, LLC, a Nevada limited liability company, and ANTHEM VENTURES INTERNATIONAL, LLC, a Nevada limited liability company, <br><br>      Plaintiffs, <br><br> vs. <br><br> DEAN BORNSTEIN, an individual a.k.a. DEAN HAMILTON a.k.a. DEAN I. BOORSTEIN, and DOES 1 through 20, inclusive, <br><br>      Defendants. | CASE NO. NC038453 <br><br> COMPLAINT FOR: <br><br> 1. FRAUD; <br> 2. CONSPIRACY TO COMMIT FRAUD; <br> 3. AIDING AND ABETTING FRAUD; AND <br> 4. NEGLIGENT MISREPRESENTATION |

Plaintiffs Anthem Ventures, LLC and Anthem Ventures International, LLC ("Plaintiffs") allege as follows:

<u>PARTIES</u>

1.   Plaintiff Anthem Ventures, LLC ("Anthem Ventures") is a limited liability company formed under the laws of the State of Nevada with its principal place of business located in the State of California, County of Orange. Anthem Ventures at all times alleged herein was and is qualified to do business in the State of California.

1

1        2.    Plaintiff Anthem Ventures International, LLC ("Anthem Ventures

2   International") is a limited liability company formed under the laws of the State of Nevada with

3   its principal place of business located in the State of California, County of Orange.  Anthem

4   Ventures International at all times alleged herein was and is qualified to do business in the State

5   of California.  Plaintiffs Anthem Ventures and Anthem Ventures International are hereafter

6   referred to collectively sometimes as "Plaintiffs."

7        3.    Plaintiffs are informed and believe and based thereon allege that

8   Defendant Dean Bornstein a.k.a. Dean Hamilton a.k.a. Dean I. Boorstein (hereinafter

9   "Bornstein") is an individual and a resident of the County of Los Angeles, State of California.

10        4.    Plaintiffs are ignorant of the true names and capacities of Defendants

11   sued herein as DOES 1 through 20, inclusive, and therefore sue said Defendants by such

12   fictitious names.  Plaintiffs are informed and believe and thereupon allege that the Doe

13   Defendants may include attorneys and accountants of the Defendants who have aided and

14   abetted the Defendants in perpetrating the fraud as herein alleged.  Plaintiffs will amend their

15   Complaint to allege the true names and capacities of said Defendants when ascertained.

16   Plaintiffs are informed and believe and based thereon allege that each of the fictitiously named

17   Defendants are, or will be, responsible in some manner for the occurrences alleged herein, and

18   that Plaintiff's injuries, both existing and prospective as alleged herein, were, are, and will be

19   proximately caused by the acts of said Defendants.

20                  FACTUAL ALLEGATIONS

21        5.    Defendant claims to be the founder and principal of The Havana

22   Company, Inc. ("THC").  Defendant claims that THC is a Canadian company, though

23   Plaintiffs are informed and believe and thereon allege its principal and only place of business,

24   if any, is in Los Angeles County, California.

25        6.    In or about December 2004, Bornstein contacted William H. Lane, Jr.

26   ("Lane") in Culver City, California, soliciting Lane's interest as an investor in business

27   ventures which Bornstein claimed to be pursuing through THC.  At said meeting and thereafter

28   at a meeting in Long Beach, California on January 13, 2005, Bornstein represented to Lane

2

1  that Bornstein and THC had applied for and received all necessary approvals, licenses and

2  permits from the Cuban and United States governments necessary to permit them to engage in

3  business activities relating to the Country of Cuba.  Bornstein specifically represented that such

4  licenses were valid, binding and in effect as of the date which he sought to induce Lane, or

5  entities which Lane might create, to invest with Bornstein.

6            7.      Based on the representations and promises of Bornstein, Lane was

7  induced to deliver monies to Bornstein to be invested in THC.  On August 26, 2004, Lane

8  formed Anthem Ventures.  On February 7, 2005, Anthem Ventures delivered the sum of

9  $500,900 to Bornstein, for the stated purposes of purchasing stock in THC through Bornstein.

10           8.      On or about February 10, 2005, Bornstein provided Anthem Ventures

11  with stock certificates in THC representing 248,440 shares of Series B Special Shares of THC

12  stock (the "THC Stock").  On or about February 24, 2005, Anthem Ventures transferred its

13  interest in the THC stock to Anthem Ventures International.  That assignment was agreed to

14  and approved by Bornstein and THC, though no revised stock certificate was delivered by

15  THC to Anthem Ventures International.

16                              FIRST CAUSE OF ACTION

17                              Fraud In The Inducement

18                   (By Anthem Ventures and Anthem Ventures International

19                        Against Bornstein and Does 1 through 20)

20           9.      Plaintiffs repeat and incorporate by reference paragraphs 1 through 8

21  above as though set forth in full hereat.

22           10.     Beginning in 2005, and continuing up through the date on which

23  Plaintiffs delivered their funds to Bornstein, Bornstein made material misrepresentations to

24  Lane in order to cause Lane and/or entities to be created by Lane to invest substantial funds,

25  through Bornstein, in THC.  Specifically, prior to Anthem Ventures delivering any funds to

26  Bornstein, Bornstein represented to Lane that Bornstein and THC had applied for and received

27  all necessary approvals, licenses and permits from the Cuban and United States authorities

28  necessary to permit them to engage in business activities relating to the Country of Cuba.

3

Exhibit "1," Page  00018

1  Bornstein specifically represented that such licenses were valid, binding and in effect as of the

2  date which he sought to induce Lane, or entities which Lane might create, to invest with

3  Bornstein.

4          11.     At the time that Bornstein made the above-described representations, the

5  representations were false.  The true facts were that neither Bornstein nor THC had the

6  necessary permits, licenses or approvals from the United States or Cuban governments to

7  engage in the business activities proposed by Bornstein.

8          12.     When Bornstein made the above-described representations, he knew them

9  to be false and made the representations with the intention to deceive and defraud Plaintiffs and

10  to induce Plaintiffs to act in reliance on the representations by delivering monies to Bornstein.

11          13.     Plaintiffs relied upon the above-described representations, and as a direct

12  result thereof, were induced to and did deliver the sum of $500,900 to Bornstein.  Plaintiffs'

13  reliance upon the representations made by Bornstein was reasonable and justified in that they

14  had no reason to believe, at the time that Bornstein was anything other than a reputable and

15  honorable businessman.

16          14.     As a proximate result of the above-described fraud and deceit of the

17  Defendants, Plaintiffs have been damaged in the sum of $500,900.

18          15.     In doing the acts herein alleged, Defendants acted with oppression,

19  fraud, and malice and the Plaintiffs are, therefore, entitled to an award of punitive damages in

20  an amount sufficient to punish and make an example of the Defendants.

21                          SECOND CAUSE OF ACTION

22                          Conspiracy to Commit Fraud

23                  (By Anthem Ventures and Anthem Ventures International

24                          Against Bornstein and Does 1 through 20)

25          16.     Plaintiffs repeat and incorporate by reference paragraphs 1 through 8

26  above as though set forth in full hereat.

27          17.     Plaintiffs are informed and believe and thereon allege that Bornstein and

28  Does 1 through 20, and each of them, agreed and knowingly and willfully conspired with each

                                    4

1  other and with THC to engage in the foregoing wrongful acts to defraud Plaintiffs. Without

2  limitation, Plaintiffs are informed and believe and thereon allege that Bornstein and Does 1

3  through 20 were fully aware at the time the above representations and promises were made,

4  that the representations and promises were false and fraudulent and were made to fraudulently

5  induce Plaintiffs to deliver substantial monies to Bornstein.

6         18.   Plaintiffs are informed and believe and thereon allege that Bornstein,

7  Does 1 through 20, and THC all took overt acts in furtherance of the conspiracy.

8         19.   As a proximate result of Defendants' fraud and deceit, as hereinabove

9  alleged, Plaintiffs have suffered damages in excess of $500,900.

10         20.   In doing the acts herein alleged, the Defendants acted with oppression,

11  fraud and malice, and Plaintiffs are therefore entitled to an award of punitive damages in an

12  amount sufficient to punish and make an example of Defendants, and each of them.

13  THIRD CAUSE OF ACTION

14  Aiding and Abetting Fraud

15  (By Anthem Ventures and Anthem Ventures International

16  Against Bornstein and Does 1 through 20)

17         21.   Plaintiffs repeat and incorporate by reference paragraphs 1 through 8

18  above as though set forth in full hereat.

19         22.   Plaintiffs are informed and believe and thereon allege that Defendants

20  Bornstein, Does 1 through 20, and THC, and each of them, aided and abetted, encouraged and

21  rendered substantial assistance to each other in accomplishing the fraudulent scheme alleged

22  hereinabove. Plaintiffs are informed and believe and thereon allege that each of the Defendants

23  aided and abetted and substantially assisted in the commission of the wrongful and fraudulent

24  conduct, with knowledge of the primary wrongdoing, and knowledge that their conduct would

25  substantially assist the accomplishment of the fraudulent scheme.

26         23.   As a proximate result of Defendants' fraud and deceit, as hereinabove

27  alleged, Plaintiffs have suffered damages in excess of $500,900.

28  / / /

5

246582v1 dd 5/17/06 7 (2444-0008)

COMPLAINT

1        24.    In doing the acts herein alleged, the Defendants acted with oppression,

2      fraud and malice, and Plaintiffs are therefore entitled to an award of punitive damages in an

3      amount sufficient to punish and make an example of Defendants, and each of them.

4      <u>FOURTH CAUSE OF ACTION</u>

5      Negligent Misrepresentation

6      (By Anthem Ventures and Anthem Ventures International

7      Against Bornstein and Does 1 through 20)

8        25.    Plaintiffs repeat and incorporate by reference paragraphs 1 through 8

9      above as though set forth in full hereat.

10       26.    Beginning in 2005, and continuing up through the date on which

11    Plaintiffs delivered their funds to Bornstein, Bornstein made material misrepresentations to

12    Lane in order to cause Lane and/or entities to be created by Lane to invest substantial funds,

13    through Bornstein, in THC.  Specifically, prior to Anthem Ventures delivering any funds to

14    Bornstein, Bornstein represented to Lane that Bornstein and THC had applied for and received

15    all necessary approvals, licenses and permits from the Cuban and United States authorities

16    necessary to permit them to engage in business activities relating to the Country of Cuba.

17    Bornstein specifically represented that such licenses were valid, binding and in effect as of the

18    date which he sought to induce Lane, or entities which Lane might create, to invest with

19    Bornstein.

20       27.    At the time that Bornstein made the above-described representations, the

21    representations were false.  The true facts were that neither Bornstein nor THC had the

22    necessary permits, licenses or approvals from the United States or Cuban governments to

23    engage in the business activities proposed by Bornstein.

24       28.    When Bornstein made the above-described representations, he had no

25    reasonable basis upon which to make the representations, and made said representations

26    without any reasonable basis for believing the representations to be true.

27       29.    Plaintiffs relied upon the above-described representations, and as a direct

28    result thereof, were induced to and did deliver the sum of $500,900 to Bornstein.  Plaintiffs'

6

Exhibit "1," Page  00021

1  reliance upon the representations made by Bornstein was reasonable and justified in that they

2  had no reason to believe, at the time that Bornstein was anything other than a reputable and

3  honorable businessman.

4        30.    As a proximate result of the above-described fraud and deceit of the

5  Defendants, Plaintiffs have been damaged in the sum of $500,900.

6                    **PRAYER FOR RELIEF**

7        WHEREFORE, Plaintiffs pray for judgment as follows:

8        1.    For compensatory damages according to proof at the time of trial;

9        2.    For special damages according to proof at the time of trial;

10       3.    For punitive damages according to proof in an amount sufficient to

11 punish and make an example of the Defendants, and each of them;

12       4.    For reasonable attorneys' fees incurred herein;

13       5.    For cost of suit herein incurred; and

14       6.    For such other relief as the Court deems proper.

15

16 DATED:  May 18, 2006              RUS, MILIBAND & SMITH
                                    A Professional Corporation
17

18

19                                 By: _____
                                    RONALD RUS
20                                  Attorneys for Plaintiffs ANTHEM
                                    VENTURES, LLC and ANTHEM
21                                  VENTURES INTERNATIONAL, LLC

22

23

24

25

26

27

28

7

246582v1 dd 5/17/06 7 (2444-0008)                                        COMPLAINT

## SUMMARY OF RECENT HISTORY OF
## EMPIRE FILM GROUP, INC.

Empire Film Group, Inc. ("EFG", or the "Company") was originally organized under the laws of the State of Florida on 07 August 1997 under the name of Ginsite Materials, Inc. It operated for a number of years, along the way changing its name to Environmental Construction Products International, Inc. In or around March, 2000 (while still operating under the name Environmental Construction Products International, Inc.) the Company effectively ceased doing business and the Company went into a "suspended" status.

In July, 2007 a shareholder of the Company brought an action in State Court in Florida to revive the Company and to have the Court appoint a receiver to take control of the Company. In September, 2007 the Court issued an order granting the petitioning shareholder control of the Company, resulting in the Company being "revived". Immediately thereafter that shareholder took the following actions with regard to the Company:

1.  Dean Bornstein was appointed as the sole director and officer of the Company.

2.  The Company was directed to seek merger and acquisition candidates in order to promote the best interests of all other shareholders of the Company.

3.  That shareholder resigned its position as being in control of the Company, with the Company then being controlled by its sole Board member and officer, Dean Bornstein.

Upon Dean Bornstein assuming control of the Board he then became the majority and controlling shareholder of the Company. In September, 2007, at a time when there were 18,087,570 issued and outstanding shares of the Company's common stock, the Company issued 75,000,000 shares to Mr. Bornstein in exchange for his transfer to the Company of any and all rights to the screenplay "Havana Heat" (the "Screenplay). The value of the Screenplay was deemed to be $10,000,000. This transfer made Mr. Bornstein the owner of just over 80% of the issued and outstanding shares of stock of the Company.

Immediately after becoming the controlling/majority shareholder of the Company the following reverse stock split and reorganization transactions were approved and implemented by the Board and the shareholders of the Company:

1.  All shareholders of the Company received one (1) share of stock for every, and in cancellation of, 150 shares they owned, resulting in Mr. Bornstein owning 500,000 shares and continuing to retain his percentage of ownership at just over 80%.

2.  The number of shares the Company was authorized to issue was increased to 250,000,000.

3.  The name of the Company was changed to EFG.

In late September, 2007 Mr. Bornstein, as the sole director of the Company and following the mandate to find merger and acquisition candidates for the Company, consummated the following acquisition transactions:

**KK0027**

1.     In a tax-free transaction EFG acquired 100% of the issued and outstanding shares of stock of Dean Productions, Inc. ("DPI") in exchange for 60,000,000 shares of EFG common stock. The assets of DPI consisted of significant contracts and agreements for entertainment and media projects. Since 100% of the shares of DPI were owned by Dean Bornstein, Mr. Bornstein became the owner of the 60,000,000 shares issued in this exchange.

2.     In a tax-free transaction EFG acquired 100% of the issued and outstanding shares of stock of Empire Film Group, Inc., a Nevada corporation ("EFG NV") in exchange for 10,000 shares of EFG common stock. The primary asset of EFG NV consisted of a development agreement between EFG NV and Mr. Bornstein. EFG NV also had significant debt obligations, each of which were converted into equity shortly after the transaction resulting in the issuance of 40,000,000 shares of EFG common stock to unrelated persons.

The current status of EFG as a result of the above transactions is summarized as follows:

1.     The name of the Company is EFG.

2.     Dean Bornstein is the sole director and officer of the corporation.

3.     Dean Bornstein owns or controls more than 50% of the issued and outstanding shares of stock of EFG.

**KK0028**

# Empire Film Group, Inc.

## Summary of Feature Film & TV Projects / Assets & Valuations

*Title-by-Title Detailed Analysis contained on the 14 back-up reports*

| | Low-End Net Value | Forecast Net Income Value | Goal Level Net Value | Potential Net Value |
|---|---|---|---|---|
| Havana Heat | $876,438 | $2,096,094 | $3,977,119 | $7,429,719 |
| Hollywood & Whine | $5,586 | $487,605 | $1,082,553 | $1,996,613 |
| The Game | $613,031 | $2,268,188 | $4,726,125 | $7,464,375 |
| Havana TV Series | $2,945,464 | $5,328,438 | $7,569,375 | $9,726,250 |
| Blonde & Blonder II | $33,750 | $1,121,133 | $3,134,766 | $5,760,156 |
| Blonde & Blonder III | $1,496,133 | $3,416,016 | $5,622,422 | $10,026,094 |
| Lowell Park | $37,344 | $772,969 | $2,185,938 | $4,099,219 |
| Jamaica Joe | $580,594 | $1,226,906 | $2,957,813 | $5,050,125 |
| The Marvin Gaye Story | $1,012,664 | $3,863,430 | $8,392,016 | $13,402,238 |
| JoJo: King of the Jungle | $1,851,750 | $5,334,375 | $11,526,750 | $19,017,000 |
| Gotch | $913,313 | $2,966,063 | $6,317,250 | $10,540,500 |
| Escondido | $435,281 | $972,563 | $1,885,875 | $3,003,188 |
| Smoke Alarm | $522,188.00 | $1,192,688.00 | $2,506,875.00 | $4,346,875.00 |
| Blonde & Blonder I | $1,289 | $74,758 | $211,164 | $353,820 |
| | **$11,324,825** | **$31,121,226** | **$62,096,041** | **$102,218,172** |

| Additional Balance Sheet Valuation of Eligible Film Production Costs, but excluding capitalized marketing costs | $69,000,000 |
|---|---|

| TOTAL VALUATION OF NET INCOME AND BALANCE SHEET ASSETS | $100,121,226 |
|---|---|

KK0029

Exhibit "3," Page  00025

JAN.03'2008 12:38 3(0)174471          TERRA COASTAL ESCROW          #1484 P.002/005

Form approved OMB No. 2502-0265

| A. | B.  TYPE OF LOAN |
|---|---|
| **Final** | 1. [ ]FHA   2. [ ]FMHA   3. [ ]CONV. UNINS. |
| | 4. [ ]VA    5. [ ]CONV. INS. |
| SETTLEMENT STATEMENT | 6. File Number: (Escrow)      7. Loan Number: |
| U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | 1956       /sk          33200026 |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME OF BORROWER:   Dean Hamilton

E. NAME OF SELLER:

| F. NAME OF LENDER: | G. PROPERTY LOCATION: |
|---|---|
| SRG, Inc. DBA as GO Financial Solutions | 24568 Piuma Road & APN 4453-002-077 |
| 848 Brickell Avenue, Suite PH | Malibu, CA 90265 |
| Miami, FL 33131 | |

| H. SETTLEMENT AGENT:  Terra Coastal Escrow, Inc. | I. SETTLEMENT DATE: |
|---|---|
| 23605 Stuart Ranch Road, Suite 200, Malibu  CA 90265 | January 3, 2008 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | 400. Gross Amount Due To Seller | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 691,888.12 | 403. | |
| 104. DEED OF TRUST ITEM #16 | 640,909.99 | 404. | |
|    Downey Savings & Loan Assn. | | | |
| 105. Payoff of Additional Loans | 938,850.72 | 405. | |
| | | | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. #25/26/30 INTERNAL REVNUE SRV | 186,966.83 | 409. | |
| 110. #27/32/34 FRANCHISE TAX BOAR | 82,396.65 | 410. | |
| 111. #29 XVOCATION PUBLISHING | 125,000.00 | 411. | |
| 112. #21/24 BRG ENTERTAINMENT | 862,500.00 | 412. | |
| 113. MECHANIC'S LIEN/CAROL MANILT | 3,167.66 | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| 117. | | 417. | |
| 118. | | 418. | |
| 120. Gross Amount Due From Borrower | 2,731,245.13 | 420. Gross Amount Due To Seller | |
| 200. Amounts Paid by or in Behalf of Borrower | | 500. Reductions In Amount Due To Seller | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan | 2,786,000.00 | 502. Settlement charges to seller (line 1400) | |
|    SRG, Inc. DBA as GO Financia | | 503. Existing loan taken subject to | |
| 203. Existing loan taken subject to | | | |
| | | | |
| 204. Second mortgage loan | | 504. Payoff of first mortgage loan | |
| | | | |
| 205. | | 505. Payoff of second mortgage loan | |
| | | | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. Deposit Credit | 6,500.00 | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 2,792,500.00 | 520. Total Reduction Amount Due | |
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | |
| 301. Gross amount due from borrower (line 120) | 2,731,945.13 | 601. Gross amount due to seller (line 420) | |
| 302. Less amount paid by borrower (line 220) | 2,792,500.00 | 602. Less reductions in amt. due seller (line 520) | |
| 303. CASH ( FROM ( X TO BORROWER | 60,554.67 | 603. CASH [X TO] ( FROM SELLER | .00 |

* REFER TO ATTACHED DETAIL STATEMENTS          Origina(

THIS IS CERTIFIED TO BE A
TRUE AND EXACT COPY OF
THE ORIGINAL

JAN.03'2008 12:38 3103174471          TERRA COASTAL ESCROW                #1484 P.003/005

|  | Final | -2- | | Escrow No: 1926 |
|---|---|---|---|---|

| SECTION L | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| **700. TOTAL SALES/BROKER'S COMMISSION** Based on price $ Division of Commission (Line 700) as follows: | | | |
| 701. $ | to | | |
| 702. $ | to | | |
| 703. Commission Paid at settlement | | | |
| 704. | | | |
| 705. | | | |
| 706. | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee SRG, Inc. DBA as GO Financial | | 97,519.00 | |
| 802. Loan Discount | | | |
| 803. Appraisal Fee     to Difilippo & Associates | | 900.00 | |
| 804. Credit Report | | | |
| 805. Lender's Inspection Fee | | | |
| 806. Mortgage Insurance Application Fee to | | | |
| 807. Assumption Fee to | | | |
| 808. Mortgage Broker Fee 1% to GMC Mortgage Capital, LLC | | 27,860.00 | |
| 809. Mortgage Broker Fee 1.625% to Globe Connection, Inc. | | 35,272.50 | |
| 810. Loan Fee 1% to Comet Financial | | | |
| 811. Commitment Fee to Seabreeze Financial **P.O.C $5,000.00 | | | |
| 812. Tax Service to SRG, Inc. DBA as GO Financial | | 50.00 | |
| 813. Flood Certification Fee to SRG, Inc. DBA as GO Financial | | 11.00 | |
| 814. BPO Expenses to SRG, Inc. DBA as GO Financial | | 600.00 | |
| 815. | | | |
| 816. | | | |
| 817. | | | |
| 818. | | | |
| 819. | | | |
| 820. | | | |
| 821. | | | |
| 822. | | | |
| 823. | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest from          to          $      /day | | | |
| 902. Mortgage Insurance Premium | | | |
| 903. Hazard Insurance Premium    to California Fair Plan | | 3,156.00 | |
| 904. Flood Insurance Premium | | | |
| 905. | | | |
| 906. | | | |
| 907. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER FOR** | | | |
| 1001. Hazard Insurance              months @ $    per month | | | |
| 1002. Mortgage Insurance            months @ $    per month | | | |
| 1003. City property taxes           months @ $    per month | | | |
| 1004. County property taxes         months @ $    per month | | | |
| 1005. Annual assessments   6 months @ $ 32,503.14 per month | | 195,020.00 | |
| 1006. Flood Insurance               months @ $    per month | | | |
| 1007. Aggregate Account Adjustment  months @ $    per month | | | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or closing fee to   Terra Coastal Escrow, Inc. | | 5,000.00 | |
| Detailed Escrow Fees | | 2,775.00 | |
| 1102. Abstract or closing fee | to | | |
| 1103. Title examination | to | | |
| 1104. Title Insurance binder | to | | |
| 1105. Document preparation | to Terra Coastal Escrow, Inc. | 1,500.00 | |
| 1106. Notary fees | to | | |
| 1107. Attorney's fee | to | | |
| 1108. Title Insurance | to Old Republic Title Company | 3,780.00 | |
| 1109. Lender's coverage $   .2786000.00/    3780.00 | | | |
| 1110. Owner's coverage $ | | | |
| 1111. | | | |
| 1112. Sub-Escrow Fee | | 230.00 | |
| 1113. | | | |
| 1114. Lender's Endorsement (s) | | 50.00 | |
| 1115. Refer to Attachment | | 3,455.00 | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording fees: Deed $ 311.00 ;Mortgage $      ;Releases $ | | 311.00 | |
| 1202. City/county tax/stamps: Deed $      ;Mortgage $ | | | |
| 1203. State tax/stamps: Deed $      ;Mortgage $ | | | |
| 1204. | | | |
| 1205. | | | |
| 1206. Title Wire Fees | | 100.00 | |
| 1207. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey | to | | |
| 1302. Pest Inspection | to | | |
| 1303. Attorney's Fees Due To Daniel D. McLaughlin | | 8,475.00 | |
| 1304. Comprehensive Personal Liabili To Abacus Insurance Company | | 150.00 | |
| 1305. Attorney Fees to Paul A. Beck, Attorney at Law | | 95,539.00 | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1309. | | | |
| 1310. | | | |
| 1311. | | | |
| 1312. | | | |
| 1313. | | | |
| 1314. | | | |
| 1315. | | | |
| 1316. | | | |
| 1317. | | | |
| 1318. | | | |
| 1319. | | | |
| 1320. | | | |
| 1321. Funds held for: | | | |
| **1400. TOTAL SETTLEMENT CHARGES** (Enter on lines 103, Section J and 502, Section K) | | 491,388.12 | |

* REFER TO ATTACHED DETAIL STATEMENTS          Original

THIS IS CERTIFIED TO BE A
TRUE AND EXACT COPY OF
THE ORIGINAL.

SRG-0042

Exhibit "4," Page  00027

JAN.03'2008 12:39 3133174471        TERRA COASTAL ESCROW        #1484 P.004/005

Final

SETTLEMENT STATEMENT U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
ATTACHMENT                                      PAGE: 1
FILE NUMBER (ESCROW): 1956      /sk              SETTLEMENT DATE: 01/03/08
BORROWER(S)
Dean Hamilton

LENDER: SRG, Inc. DBA as GO Financial Solutions
PROPERTY LOCATED AT: 24560 Piuma Road & APN 4453-002-077
              Malibu, CA 90265
-------------------------------------------------------------------------

- PAGE 1 -
J. SUMMARY OF BORROWER'S TRANSACTION

| | | | |
|---|---|---|---|
| 104. DEED OF TRUST ITEM #16 | * | $ | 640,385.55 |
| Downey Savings & Loan Assn. | 618,984.69 | | |
| Interest @ 186.98$Per Diem | | | |
| From 12/01/07 To 01/04/08 | 6,544.48 | | |
| Recording Fee | 9.00 | | |
| Reconveyance Fee | 45.00 | | |
| Late Charge | 371.19 | | |
| Statement Fees accrued | 180.00 | | |
| Foreclosure Fees | 3,032.10 | | |
| Interest Accrued thru 11/30/07 | 11,219.13 | | |
| | | | |
| 105. PAYOFF OF ADDITIONAL LOANS | * | $ | 936,830.72 |
| The C. Dean Clark and Joyce L. | 160,000.00 | | |
| Interest @ 39.18Per Diem | | | |
| From 11/01/07 To 01/04/08 | 3,836.71 | | |
| Late Charge(s) | 198.00 | | |
| Statement / Forwarding Fee | 30.00 | | |
| California Home Loans | 50,000.00 | | |
| Interest @ 18% | | | |
| From 01/01/07 To 01/03/08 | 9,049.32 | | |
| Unpaid Late Charges | 45.00 | | |
| Accrued Late Charge(s) | 495.00 | | |
| Trust Balance | -153.73 | | |
| Other Fees | 200.00 | | |
| Unpaid charges | 150,508.45 | | |
| Harvey Goldman | 122,749.70 | | |
| Interest @ 25.87Per Diem | | | |
| From 12/20/07 To 01/04/08 | 413.92 | | |
| Reduction | -10,000.00 | | |
| Malibu Glass & Mirror | 10,000.00 | | |
| Lone Runner Pension | 30,000.00 | | |
| Caine & Weiner | 26,718.84 | | |
| Court Costs | 57.30 | | |
| Payments Received | -8,621.97 | | |
| 10% post judg intrst to 1/4/08 | 15,055.66 | | |
| California Home Loans | 170,000.00 | | |
| Interest @ 80.1Per Diem | | | |
| From 05/01/07 To 01/03/08 | 19,624.66 | | |
| Late Charge(s) | 1,208.35 | | |
| Accrued Late Charges | 1,691.69 | | |
| Unpaid Charges | 10,897.77 | | |
| Other Fees | 175.00 | | |
| University of Indianapolis | 150,000.00 | | |
| Interest @ 40.03Per Diem | | | |
| From 12/01/07 To 01/04/08 | 1,401.05 | | |
| Late Fees to include 12/07 | 1,200.00 | | |
| Interest on Late Payments | 1,140.00 | | |
| Interest through 12/1/07 | 19,000.00 | | |

- PAGE 2 -

THIS IS CERTIFIED TO BE A
TRUE AND EXACT COPY OF
THE ORIGINAL.
*[signature]*

PAID FROM
BORROWER'S
FUNDS

| | | | | |
|---|---|---|---|---|
| DETAILED ESCROW FEES | | | $ | 4,775.10 $ |
| Payoff Processing | | | | 3,900.00 |
| Wire Transfer Fee | | | | 150.00 |
| Overnight Fee(s) | | | | 198.00 |

**SRG-0043**

Exhibit "4," Page  00028

JAN.03'2008 12:39 3103174471          TIERRA COASTAL ESCROW          #2484 P.005/006

Final

SETTLEMENT STATEMENT U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
ATTACHMENT                                        PAGE: 2
FILE NUMBER (ESCROW): 1956      /gk              SETTLEMENT DATE: 01/03/08
BORROWER(S)
Dean Hamilton

LENDER: SRG, Inc. DBA as GO Financial Solutions
PROPERTY LOCATED AT: 24660 Piuma Road & APN 4452-002-077
              Malibu, CA 90265

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ETAILED ESCROW FEES                       $      4,775.10 $
  Messenger Fee                                      77.10
  Email Loan Docs                                   100.00
  Email Processing Fees                             750.00

1115. REFER TO ATTACHMENT                  $      3,456.49 $
  Title Messenger/Overnight Fees                   120.00
  TAX SALE -- APN 4453-002-077                    1,726.49
  1st 1/2 07-08 APN 4453-002-077                  1,610.00

THIS IS CERTIFIED TO BE A
TRUE AND EXACT COPY OF
THE ORIGINAL

**SRG-0044**

Exhibit "4," Page 00029

RECEIVED
DEPT. B

DEC 2 0 2007

LONG BEACH
SUPERIOR COURT

ORIGINAL
FILED
LOS ANGELES SUPERIOR COURT

JAN 0 2 2008

JOHN . . . . . . . . . . . . . . . . . rk

*M. Ferrara*
BY M. FERRARA, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, SOUTH DISTRICT

| | |
|---|---|
| ANTHEM VENTURES, LLC, a Nevada limited liability company, and ANTHEM VENTURES INTERNATIONAL, LLC, a Nevada limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> DEAN BORNSTEIN, an individual a.k.a. DEAN HAMILTON a.k.a. DEAN I. BOORSTEIN, and DOES 1 through 20, inclusive, <br><br> Defendants. | CASE NO. NC038471 <br><br> [ASSIGNED FOR ALL PURPOSES TO HONORABLE PATRICK T. MADDEN DEPT. B] <br><br> [~~PROPOSED~~] JUDGMENT |

///
///
///
///
///
///
///

1

305488v1 ukn 10/17/07 11 (2680-0003)

STIPULATED JUDGMENT

1    Pursuant to the Settlement Agreement entered into by and between Plaintiffs

2  Anthem Ventures, LLC, a Nevada limited liability company, and Anthem Ventures International,

3  LLC, a Nevada limited liability company on the one hand, and Defendant Dean Bornstein, an

4  individual a.k.a. Dean Hamilton a.k.a. Dean I. Bornstein (erroneously named in the caption as

5  "Boorstein") on the other hand,

6    IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiffs shall

7  have judgment against Defendant Dean Bornstein, an individual a.k.a. Dean Hamilton a.k.a. Dean

8  I. Bornstein in the amount of Five Hundred Thousand Dollars and No Cents ($500,000.00).

9    The Court also finds Defendant has paid Plaintiffs the sum of $ _95,000_

10 prior to entry of this Judgment for which Defendant is entitled to an offset pursuant to the terms

11 of the parties' Settlement Agreement.   Therefore, the net amount of the Judgment in favor of

12 Plaintiffs is $ _407,160_

13

14 DATED: _Jan. 2, 2008_                               _____
                                                        Judge of the Superior Court
15

16 APPROVED AS TO FORM AND CONTENT PURSUANT TO STIPULATION:

17

18 ANTHEM VENTURES, LLC,
   a Nevada limited liability company
19

20 By: _____
       William H. Lane, Jr.
21     Manager

22 ANTHEM VENTURES INTERNATIONAL, LLC,
   a Nevada limited liability company
23

24 By: _____
       William H. Lane, Jr.
25     Manager

26

27 _____
   Dean Bornstein, an individual
28 a.k.a. Dean Hamilton
   a.k.a. Dean I. Bornstein

                                2

305488v1 uhn 10/17/07 11 (2680-0001)                          STIPULATED JUDGMENT

1  RUS, MILIBAND & SMITH
   A Professional Corporation
2
3  By:
4      Ronald Rus
       Attorneys for Anthem Ventures, LLC and
5      Anthem Ventures International, LLC
6
   LAW OFFICES OF PAUL A. BECK
7
8  By:
       Paul A. Beck
9      Attorneys for Dean Bornstein, an individual
       a.k.a. Dean Hamilton a.k.a. Dean I. Bornstein
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                    3

305488v1 ukn 10/17/07 11 (2680-0003)                      STIPULATED JUDGMENT

1 | RONALD RUS, #67369
   | rrus@rusmiliband.com
2 | RANDALL A. SMITH, #116244
   | rsmith@rusmiliband.com
3 | JAME P. MASCARO, #209773
   | jmascaro@rusmiliband.com
4 | RUS, MILIBAND & SMITH
   | A Professional Corporation
5 | Seventh Floor
   | 2211 Michelson Drive
6 | Irvine, California 92612
   | Telephone:  (949) 752-7100
7 | Facsimile:  (949) 252-1514

8 | Attorneys for Plaintiffs ANTHEM VENTURES, LLC and
   | ANTHEM VENTURES INTERNATIONAL LLC

9

**RECEIVED DEPT. B**

DEC 02 2008

**SUPERIOR COURT**

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 08 2009

John A. Clarke, Clerk

By _____, Deputy

10 |                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11 |                    **COUNTY OF LOS ANGELES, SOUTH DISTRICT**

12

13 | ANTHEM VENTURES, LLC, a Nevada          )   CASE NO. NC051000
   | limited liability company; and          )
14 | ANTHEM VENTURES INTERNATIONAL           )   [ASSIGNED FOR ALL PURPOSES TO
   | LLC, a Nevada limited liability company, )   HONORABLE PATRICK T. MADDEN
15 |                                          )   DEPT. B]
   |                Plaintiffs,               )
16 |                                          )   **SECOND AMENDED COMPLAINT**
   | vs.                                      )
17 |                                          )   [JURY TRIAL DEMANDED]
   | DEAN BORNSTEIN, an individual; ERIC      )
18 | PARKINSON, an individual; JIM            )
   | TOWNSEND, an individual; PAUL A.         )
19 | BECK, an individual, CHRISTINA           )
   | GANCEVICH, an individual; EMPIRE FILM    )
20 | GROUP, INC., a Nevada corporation;       )
   | EMPIRE FILM GROUP, INC., a Florida       )
21 | corporation; CANADIAN GLOBAL MEDIA,      )
   | INC., a Canadian corporation;            )
22 | EMPIRE HOME ENTERTAINMENT, a             )
   | business entity of unknown form; DEAN    )
23 | HAMILTON ENTERTAINMENT, INC., a          )
   | California corporation; DEAN             )
24 | PRODUCTIONS, INC., a California          )
   | corporation; SUPERMODELS, INC., a        )
25 | California corporation; BIG ROCK         )
   | PRODUCTIONS, INC., a California          )
26 | corporation; TITAN ENTERTAINMENT        )
   | GROUP, LLC, a California limited liability )
27 | company; HANNOVER HOUSE, a business      )
   | entity of unknown form; TRUMAN PRESS, a  )

28

1

SECOND AMENDED COMPLAINT

Exhibit "6," Page  00033

1 | California corporation; MOUNTAIN )
ESTATES LLC, a California limited liability )
2 | company; OLYMPIC LAND )
DEVELOPMENT, LLC, a California limited )
3 | liability company; WHEELER CANYON )
PARTNERS, LLC, a Delaware limited )
4 | liability company; WHEELER CANYON )
MANAGEMENT, LLC, a California limited )
5 | liability company; and DOES 12 through 50, )
inclusive, )
6 | )
                Defendants. )
7 | )

8

9        Plaintiffs Anthem Ventures, LLC and Anthem Ventures International LLC

10 ("Plaintiffs") allege as follows:

11                             OVERVIEW OF CLAIMS

12        1.     This case involves an ongoing and systematic process by Defendant Dean

13 Bornstein ("Mr. Bornstein") and his cronies to defraud investors through a variety of sham

14 film productions and other endeavors. Mr. Bornstein's modus operandi includes baiting

15 potential investors into providing funds to Mr. Bornstein and his cohorts by soliciting

16 investments in sham companies to purportedly finance the production of various films, which is

17 then followed by the transfer, concealment and dissipation of assets with the specific intent of

18 hindering, delaying or defrauding those creditors.

19        2.     The "cover story" for the scheme, as represented to potential investors

20 by Mr. Bornstein and his associates is that they are film production and distribution companies

21 with millions of dollars in film budgets and investment capital poised to produce and distribute

22 the next blockbuster film. New investors are lured into making investments with

23 Mr. Bornstein or his phony companies with promises that investors will receive interests in

24 various films with lucrative returns on their investments.

25        3.     Mr. Bornstein and his cronies have intentionally created an air of

26 legitimacy about their scheme by recruiting the service of various internet based news agencies,

27 public relations firms and other companies to act as pitchmen for their schemes. In fact, most,

28 if not all, of the representations made by Mr. Bornstein and his accomplices are false. In

                                                2

350392v1 jm 12/1/08 27 (2680-0003)                                SECOND AMENDED COMPLAINT

1  reality they have little or no investment capital and have the rights to produce or distribute few,

2  if any, films.  In reality, all investor funds provided to Mr. Bornstein and his associates are

3  used to fund their own lavish lifestyles and perpetuate their scheme.

4  <u>PARTIES</u>

5     4. Plaintiff Anthem Ventures, LLC ("Anthem Ventures") is a limited

6  liability company formed under the laws of the State of Nevada with its principal place of

7  business located in the State of California, County of Orange.  Anthem Ventures at all relevant

8  times was and is qualified to do business in the State of California.

9     5. Plaintiff Anthem Ventures International LLC ("Anthem Ventures

10  International") is a limited liability company formed under the laws of the State of Nevada with

11  its principal place of business located in the State of California, County of Orange.  Anthem

12  Ventures International at all relevant times was and is qualified to do business in the State of

13  California.  Plaintiffs Anthem Ventures and Anthem Ventures International are hereafter

14  referred to collectively as "Plaintiffs."

15     6. Plaintiffs are informed and believe and based thereon allege that

16  Mr. Bornstein, using various alias identities to help perpetuate his fraud, including

17  Dean Hamilton, Dean I. Hamilton, Dean I. Bornstein and Dean Hamilton-Bornstein, is an

18  individual and a resident of the State of California, County of Los Angeles.

19     7. Plaintiffs are informed and believe and based thereon allege that Eric

20  Parkinson ("Mr. Parkinson") is an individual and a resident of the State of California, County

21  of Los Angeles.  Plaintiffs are informed and believe and based thereon allege that

22  Mr. Parkinson is the recipient of fraudulent transfers as alleged herein and/or has conspired

23  with Mr. Bornstein to hinder, delay or defraud his creditors.

24     8. Plaintiffs are informed and believe and based thereon allege that Jim

25  Townsend ("Mr. Townsend") is an individual and a resident of the State of California, County

26  of Los Angeles.  Plaintiffs are informed and believe and based thereon allege that

27  Mr. Townsend is the recipient of fraudulent transfers as alleged herein and/or has conspired

28  with Mr. Bornstein to hinder, delay or defraud his creditors.

3

SECOND AMENDED COMPLAINT

1    9.    Plaintiffs are informed and believe and based thereon allege that Paul A.

2  Beck ("Mr. Beck") is an individual and a resident of the State of California, County of Los

3  Angeles.  Plaintiffs are informed and believe and based thereon allege that Mr. Beck is the

4  recipient of fraudulent transfers as alleged herein and/or has conspired with Mr. Bornstein to

5  hinder, delay or defraud his creditors.

6    10.    Plaintiffs are informed and believe and based thereon allege that

7  Defendant Christina Gancevich ("Ms. Gancevich") is an individual and a resident of the State

8  of California, County of Los Angeles.  Plaintiffs are informed and believe and based thereon

9  allege that Ms. Gancevich is Mr. Bornstein's legal or common law wife, that she is also known

10  as Christina Bornstein, and that she is the recipient of fraudulent transfers as alleged herein,

11  and/or has conspired with Mr. Bornstein to hinder, delay or defraud his creditors.

12    11.    Plaintiffs are informed and believe and based thereon allege that Empire

13  Film Group, Inc., a Nevada corporation ("EFG Nevada") is a corporation formed under the

14  laws of the State of Nevada with its principal place of business located in the State of

15  California, County of Los Angeles.  Plaintiffs are further informed and believe and based

16  thereon allege that EFG Nevada has been at all relevant times qualified to conduct business in

17  California.  Plaintiffs are informed and believe and based thereon allege that Defendant EFG

18  Nevada is the recipient of fraudulent transfers as alleged herein, has conspired with

19  Mr. Bornstein to hinder, delay or defraud his creditors, and/or has been and remains merely a

20  fictitious business under which Mr. Bornstein and the other individually named defendants

21  conduct their own personal affairs.

22    12.    Plaintiffs are informed and believe and based thereon allege that Empire

23  Film Group, Inc., a Florida corporation ("EFG Florida") is a corporation formed under the

24  laws of the State of Florida with its principal place of business located in the State of

25  California, County of Los Angeles.  Plaintiffs are informed and believe and based thereon

26  allege that Defendant EFG Florida is the recipient of fraudulent transfers as alleged herein, has

27  conspired with Mr. Bornstein to hinder, delay or defraud his creditors, and/or has been and

28  / / /

4

Exhibit "6," Page  00036

1   remains merely a fictitious business under which Mr. Bornstein and the other individually

2   named defendants conduct their own personal affairs.

3          13.    Plaintiffs are informed and believe and based thereon allege that

4   Canadian Global Media, Inc. ("Canadian Global Media") is a corporation formed under the

5   laws of Canada with its principal place of business located in the State of California, County of

6   Los Angeles.  Plaintiffs are informed and believe and based thereon allege that Defendant

7   Canadian Global Media is the recipient of fraudulent transfers as alleged herein, has conspired

8   with Mr. Bornstein to hinder, delay or defraud his creditors, and/or has been and remains

9   merely a fictitious business under which Mr. Bornstein and the other individually named

10  defendants conduct their own personal affairs.

11         14.    Plaintiffs are informed and believe and based thereon allege that Empire

12  Home Entertainment is a business entity of unknown form or origin.  Plaintiffs are informed

13  and believe and based thereon allege that Defendant Empire Home Entertainment is the

14  recipient of fraudulent transfers as alleged herein, has conspired with Mr. Bornstein to hinder,

15  delay or defraud his creditors, and/or has been and remains merely a fictitious business under

16  which Mr. Bornstein and the other individually named defendants conduct their own personal

17  affairs.

18         15.    Plaintiffs are informed and believe and based thereon allege that Dean

19  Hamilton Entertainment, Inc. ("Dean Hamilton Entertainment") is a corporation formed under

20  the laws of the State of California with its principal place of business located in the State of

21  California, County of Los Angeles.  Plaintiffs are informed and believe and based thereon

22  allege that Defendant Dean Hamilton Entertainment is the recipient of fraudulent transfers as

23  alleged herein, has conspired with Mr. Bornstein to hinder, delay or defraud his creditors,

24  and/or has been and remains merely a fictitious business under which Mr. Bornstein and the

25  other individually named defendants conduct their own personal affairs.

26         16.    Plaintiffs are informed and believe and based thereon allege that Dean

27  Productions, Inc. ("Dean Productions") is a corporation formed under the laws of the State of

28  California with its principal place of business located in the State of California, County of Los

5

Exhibit "6," Page  00037

1   Angeles.  Plaintiffs are informed and believe and based thereon allege that Defendant Dean

2   Productions is the recipient of fraudulent transfers as alleged herein, has conspired with

3   Mr. Bornstein to hinder, delay or defraud his creditors, and/or has been and remains merely a

4   fictitious business under which Mr. Bornstein and the other individually named defendants

5   conduct their own personal affairs.

6           17.   Plaintiffs are informed and believe and based thereon allege that

7   Supermodels, Inc. ("Supermodels") is a corporation formed under the laws of the State of

8   California with its principal place of business located in the State of California, County of Los

9   Angeles.  Plaintiffs are informed and believe and based thereon allege that Defendant

10  Supermodels is the recipient of fraudulent transfers as alleged herein, has conspired with

11  Mr. Bornstein to hinder, delay or defraud his creditors, and/or has been and remains merely a

12  fictitious business under which Mr. Bornstein and the other individually named defendants

13  conduct their own personal affairs.

14          18.   Plaintiffs are informed and believe and based thereon allege that Big

15  Rock Productions, Inc. ("Big Rock Productions") is a corporation formed under the laws of the

16  State of California with its principal place of business located in the State of California, County

17  of Los Angeles.  Plaintiffs are informed and believe and based thereon allege that Defendant

18  Big Rock Productions is the recipient of fraudulent transfers as alleged herein, has conspired

19  with Mr. Bornstein to hinder, delay or defraud his creditors, and/or has been and remains

20  merely a fictitious business under which Mr. Bornstein and the other individually named

21  defendants conduct their own personal affairs.

22          19.   Plaintiffs are informed and believe and based thereon allege that Titan

23  Entertainment Group, LLC ("Titan Entertainment Group") is a limited liability company

24  formed under the laws of the State of California with its principal place of business located in

25  the State of California, County of Los Angeles.  Plaintiffs are informed and believe and based

26  thereon allege that Defendant Titan Entertainment Group is the recipient of fraudulent transfers

27  as alleged herein, has conspired with Mr. Bornstein to hinder, delay or defraud his creditors,

28  / / /

6

350392v1 jm 12/1/08 27 (2680-0003)

SECOND AMENDED COMPLAINT

Exhibit "6," Page  00038

1    and/or has been and remains merely a fictitious business under which Mr. Bornstein and the

2    other individually named defendants conduct their own personal affairs.

3          20.     Plaintiffs are informed and believe and based thereon allege that

4    Hannover House ("Hannover House") is a business entity of unknown form or origin.

5    Plaintiffs are informed and believe and based thereon allege that Defendant Hannover House is

6    the recipient of fraudulent transfers as alleged herein, has conspired with Mr. Bornstein to

7    hinder, delay or defraud his creditors, and/or has been and remains merely a fictitious business

8    under which Mr. Bornstein and the other individually named defendants conduct their own

9    personal affairs.

10         21.     Plaintiffs are informed and believe and based thereon allege that Truman

11    Press, Inc. ("Truman Press") is a corporation formed under the laws of the State of Arkansas

12    with its principal place of business located in the State of California, County of Los Angeles.

13    Plaintiffs are informed and believe and based thereon allege that Defendant Truman Press is the

14    recipient of fraudulent transfers as alleged herein, has conspired with Mr. Bornstein to hinder,

15    delay or defraud his creditors, and/or has been and remains merely a fictitious business under

16    which Mr. Bornstein and the other individually named defendants conduct their own personal

17    affairs.

18         22.     Plaintiffs are informed and believe and based thereon allege that Olympic

19    Land Development, LLC ("Olympic Land Development") is a limited liability company

20    formed under the laws of the State of California with its principal place of business located in

21    the State of California, County of Los Angeles. Plaintiffs are informed and believe and based

22    thereon allege that Defendant Olympic Land Development is the recipient of fraudulent

23    transfers as alleged herein, has conspired with Mr. Bornstein to hinder, delay or defraud his

24    creditors, and/or has been and remains merely a fictitious business under which Mr. Bornstein

25    and the other individually named defendants conduct their own personal affairs.

26         23.     Plaintiffs are informed and believe and based thereon allege that

27    Mountain Estates, LLC ("Mountain Estates") is a limited liability company formed under the

28    laws of the State of California with its principal place of business located in the State of

7

Exhibit "6," Page  00039

1   California, County of Los Angeles.  Plaintiffs are informed and believe and based thereon

2   allege that Defendant Mountain Estates is the recipient of fraudulent transfers as alleged herein,

3   has conspired with Mr. Bornstein to hinder, delay or defraud his creditors, and/or has been and

4   remains merely a fictitious business under which Mr. Bornstein and the other individually

5   named defendants conduct their own personal affairs.

6          24.    Plaintiffs are informed and believe and based thereon allege that Wheeler

7   Canyon Partners, LLC ("Wheeler Canyon Partners") is a limited liability company formed

8   under the laws of the State of Delaware with its principal place of business located in the State

9   of California, County of Los Angeles.  Plaintiffs are informed and believe and based thereon

10  allege that Defendant Wheeler Canyon Partners is the recipient of fraudulent transfers as

11  alleged herein, and/or has conspired with Mr. Bornstein to hinder, delay or defraud his

12  creditors.

13         25.    Plaintiffs are informed and believe and based thereon allege that Wheeler

14  Canyon Management, LLC ("Wheeler Canyon Management") is a limited liability company

15  formed under the laws of the State of California with its principal place of business located in

16  the State of California, County of Los Angeles.  Plaintiffs are informed and believe and based

17  thereon allege that Defendant Wheeler Canyon Management is the recipient of fraudulent

18  transfers as alleged herein, and/or has conspired with Mr. Bornstein to hinder, delay or defraud

19  his creditors.

20         26.    Plaintiffs are informed and believe and based thereon allege that each of

21  the defendants was and now is, the agent, servant, employee, representative, or alter ego of

22  each other defendant and was acting within the scope of the authority granted such agent,

23  servant, employee, or representative by the other defendants.

24         27.    Plaintiffs are informed and believe and based thereon allege that EFG

25  Nevada, EFG Florida, Canadian Global Media, Empire Home Entertainment, Dean Hamilton

26  Entertainment, Dean Productions, Supermodels, Big Rock Productions, Titan Entertainment

27  Group, Hannover House and Truman Press ("Entity Defendants") are owned and controlled by

28  Mr. Bornstein, Mr. Parkinson and/or Mr. Townsend ("Individual Defendants"), and that these

8

Exhibit "6," Page  00040

1  entities are, and at all relevant times were, the alter egos of the Individual Defendants and that

2  there exists between the Individual Defendants, on the one hand, and the Entity Defendants, on

3  the other hand, a unity of interest and ownership such that any individuality and separateness

4  between the Individual Defendants, on the one hand, and the Entity Defendants, on the other

5  hand, has never existed or has ceased to exist, that the Entity Defendants are mere shells,

6  instrumentalities, and conduits through which the Individual Defendants conduct business

7  exactly as if no entities had been formed; and that adherence to the fiction of a separate

8  existence between the Individual Defendants, on the one hand, and the Entity Defendants, on

9  the other hand, would sanction fraud and promote injustice and perpetuate the schemes and

10  fraudulent conduct of Mr. Bornstein and the other Individual Defendants as alleged herein.

11       28.    Plaintiff is further informed and believes and based thereon alleges as

12  follows:

13       A.    The Individual Defendants are, and at all relevant times alleged

14  herein have been, the controlling owners, shareholders, managing officers, directors or agents

15  of the Entity Defendants either directly or indirectly through a complex web of interlocking

16  business entities;

17       B.    The Individual Defendants, on the one hand, and each of the

18  Entity Defendants, on the other hand, have commingled and continue to commingle funds and

19  other assets of one another and have participated in and continue to participate in the

20  unauthorized diversion of business funds or assets for illegitimate purposes and to further

21  hinder, delay or defraud Mr. Bornstein's creditors;

22       C.    The Individual Defendants have treated and continue to treat the

23  funds and assets of each of the Entity Defendants as their own;

24       D.    Each of the Entity Defendants have held out and continue to hold

25  out that they are jointly liable for the debts of one another;

26       E.    Each of the Entity Defendants have failed and continue to fail to

27  maintain adequate records and minutes;

28  / / /

9

350392v1 jm 12/1/08 27 (2680-0003)              SECOND AMENDED COMPLAINT

Exhibit "6," Page  00041

F.    Each of the Entity Defendants were not and are not adequately capitalized such that these entities are devoid of assets that prevent them from paying their debts as they become due;

G.    The Individual Defendants have used and continue to use each of the Entity Defendants as mere shells, instrumentalities, or conduits for their own personal profit;

H.    The Individual Defendants, on the one hand, and each of the Entity Defendants, on the other hand, have diverted and continue to divert the assets of one another to themselves to the detriment of Mr. Bornstein's creditors; and

I.    The Individual Defendants, on the one hand, and each of the Entity Defendants, on the other hand, have disregarded and continue to disregard legal formalities and have failed and continue to fail to maintain an arms-length relationship among themselves.

29.    Plaintiffs are informed and believe and based thereon allege that the observance of the fallacy of a separate existence between the Individual Defendants, on the one hand, and each of the Entity Defendants, on the other hand, would permit abuse of any corporate privilege and would sanction fraud.

30.    Plaintiffs are ignorant of the true names and capacities of defendants sued herein as Does 12 through 50, inclusive, and therefore sues said defendants by such fictitious names.  Plaintiffs will amend this Second Amended Complaint to allege the true names and capacities of said defendants when ascertained.  Plaintiffs are informed and believe and based thereon allege that each of the fictitiously named defendants are, or will be, responsible in some manner for the occurrences alleged herein, and that Plaintiffs' injuries were caused by the acts of said defendants.

## FACTUAL ALLEGATIONS

31.    On January 2, 2008, a judgment was rendered in favor of Plaintiffs and against Mr. Bornstein in the Superior Court of the State of California, County of Los Angeles, South District, in *Anthem Ventures, etc., et al. v. Dean Bornstein, etc., et al.*, Case No.

10

350392v1 jm 12/1/08 27 (2680-0003)

SECOND AMENDED COMPLAINT

Exhibit "6," Page  00042

1  NC038453, in the sum of $407,160 as a result of the fraudulent conduct of Mr. Bornstein

2  which caused damage to Plaintiffs (the "Underlying Case").

3       32.    Plaintiffs are informed and believe and based thereon allege that

4  Mr. Bornstein, Mr. Parkinson and Mr. Townsend are the founders, principals and sole

5  shareholders of each of the Entity Defendants which purport to be film production or

6  distribution companies.  Plaintiffs are further informed and believe that these entities are

7  nothing but fictitious businesses under which Mr. Bornstein, Mr. Parkinson and Mr. Townsend

8  conduct their own personal affairs, and that Mr. Bornstein and his cohorts use these entities as

9  conduits through which they receive income for their contrived lifestyles derived from

10  fraudulent activities, including the fraudulent raising of money from duped investors.

11       33.    Plaintiffs are further informed and believe and based thereon allege that

12  Mr. Bornstein and his cohorts perpetuate their scheme, in part, by purchasing rights to various

13  media projects, which is then followed by the fraudulent transferring of ownership of those

14  rights to their alter-egos and each other.  Mr. Bornstein and his cronies use various advertising

15  mediums to convince potential investors that their entities are in the process of producing or

16  distributing the projects, and that they need working capital to finish their projects.  As soon as

17  investors give money to Mr. Bornstein and his cohorts, they abscond and transfer ownership of

18  the unfinished projects (if they exist at all) to their other entities beyond the reach of the duped

19  investors and use the fraudulently raised funds to perpetuate their scheme.  Plaintiffs are

20  informed and believe that in some instances, the Individual Defendants and Entity Defendants

21  never had the production or distribution rights they claim to have at all.

22       34.    For instance, according to its former internet website (which now directs

23  to another Canadian media company) Canadian Global Media was supposedly "an International

24  production company specializing in Canadian content and International film and television

25  projects and development."  Also according to its former internet website, Canadian Global

26  Media is in the process of producing several feature films, including: (1) Havana; (2) Blonde &

27  Blonder II; (3) Havana TV Series; (4) Kilo; (5) Father, Father, Why?; (6) The Game; (7) Short

28  / / /

11

SECOND AMENDED COMPLAINT

Exhibit "6," Page  00043

1 | Straw; (8) Sue; (9) The Commander's Son; (10) Blonde & Blonder III; (11) Core of Truth; (12)

2 | Lowell Park; (13) Gotch; and (14) Will to Win.

3 |       35.    Canadian Global Media's internet website also stated that, "In 2006,

4 | Canadian Global Media joined forces with Insight Films for its new feature *Blonde and*

5 | *Blonder*' starring Pamela Anderson and Denise Richards."

6 |       36.    Plaintiffs are informed and believe and based thereon allege that in or

7 | about September 2007, Mr. Bornstein formed EFG Nevada at a time when Mr. Bornstein had

8 | actual knowledge that a judgment in the Underlying Case would be rendered. Plaintiffs are

9 | informed and believe that although EFG Nevada was formed as a Nevada corporation,

10 | Mr. Bornstein is the company's founder, principal and sole shareholder and that EFG Nevada

11 | was formed as an artifice to accomplish Mr. Bornstein's various nefarious activities in fraud of

12 | his creditors. Plaintiffs are further informed and believe and based thereon allege that EFG

13 | Nevada is merely another conduit through which Mr. Bornstein conducts his own personal

14 | affairs and through which he has continued to fraudulently raise money from investors through

15 | the illegal sales of unregistered securities, false representations and fraudulent schemes. More

16 | specifically, Mr. Bornstein and his cronies orchestrated the apparent transfer of Canadian

17 | Global Media's assets to EFG Nevada, or other Entity Defendants, for the purpose of

18 | hindering, delaying or defrauding Mr. Bornstein's creditors.

19 |       37.    According to the internet website of EFG Nevada, it "is a new

20 | independent film finance, production, and distribution company led by a management team

21 | with over 25 years of experience in development, production, distribution, finance and

22 | marketing of feature films and television programming."

23 |       38.    Also according to its internet website, EFG Nevada claims responsibility

24 | for many of the same film productions as Mr. Bornstein's other phony company, Canadian

25 | Global Media, including the following films: (1) Havana Heat; (2) Gotch; (3) Blonde &

26 | Blonder II; (4) New Models of the World; (5) Havana Heat TV Series; (6) Kilo; (7) Marvin

27 | Gaye-Father, Father, Why?; (8) Sue; (9) Lowell Park; and (10) The Game.

28 | / / /

12

Exhibit "6," Page  00044

1        39.    Additionally, EFG Nevada's internet website states that, "In June 2006,

2   [EFG Nevada] entered into a financing and production agreement with Insight Film Studios for

3   Canadian financing and production activities for projects that will be co-produced in Canada.

4   [EFG Nevada's] and Insight's first joint venture was the feature film 'Blonde and Blonder'."

5   Plaintiffs are informed and believe and based thereon allege that "Blonde and Blonder" was a

6   film that was produced before EFG Nevada existed.  Indeed, Plaintiffs are informed and

7   believe that many of the statements made on the EFG Nevada internet website are false.

8   Plaintiffs are informed and believe and based thereon allege that these statements were made as

9   part of the ongoing scheme to hinder, delay or defraud Mr. Bornstein's creditors.

10        40.    Plaintiffs are further informed and believe and based thereon allege that

11   in addition to the above-described transfers of assets from Mr. Bornstein's alter ego, Canadian

12   Global Media, to Mr. Bornstein's newly created alter ego, EFG Nevada, Mr. Bornstein has

13   also fraudulently transferred additional assets to and from the other Entity Defendants with the

14   intention of hindering, delaying or defrauding his creditors.

15        41.    Despite the fact that EFG Nevada's website states that it has the rights to

16   produce or distribute those films, Plaintiffs are informed and believe and based thereon allege

17   that Canadian Global Media actually transferred its rights to several of the aforementioned

18   films to the other Entity Defendants besides EFG Nevada for little or no consideration for the

19   purpose of hindering, delaying or defrauding Mr. Bornstein's creditors, including Plaintiffs.

20        42.    Plaintiffs are informed and believe and based thereon allege that

21   Plaintiffs claims against Mr. Bornstein arose, Mr. Bornstein and the other Individual

22   Defendants have actually transferred EFG Nevada's interests in the aforementioned film

23   projects to several other Entity Defendants, including but not limited to EFG Florida, Empire

24   Home Entertainment, Hannover House or Truman Press.  Moreover, EFG Nevada's internet

25   website claims that, "it has acquired a majority ownership stake in Truman Press, Inc., parent

26   company of film distributor and book publisher Hannover House (www.HannoverHouse.com).

27   The new film and DVD distribution division will be renamed Empire Home Entertainment, a

28   wholly owned subsidiary of Empire Film Group, Inc."  Despite these and similar statements,

13

SECOND AMENDED COMPLAINT

Exhibit "6," Page  00045

1    EFG Nevada now claims it has no interest in any of the aforementioned films, and has no

2    corporate records that would be maintained by any legitimate business and no documents

3    related to its acquisition of Truman Press, Hannover House or Empire Home Entertainment.

4    Rather, and as evidence of their conspiracy to defraud their creditors, the Individual

5    Defendants and Entity Defendants now claim that the referenced press releases were never

6    made, and that EFG Florida is the real party in interest despite substantial evidence to the

7    contrary.

8            43.    As part of a settlement agreement in the underlying case, Mr. Bornstein

9    agreed to make periodic payments to Plaintiffs beginning on November 15, 2007 and agreed to

10   execute and record a deed of trust against his residential real property in Malibu as security.

11   He also agreed that if he failed to timely discharge any of his obligations under the agreement,

12   Plaintiffs would be allowed to immediately have judgment entered against him in the full

13   amount of the outstanding obligation.

14           44.    When Mr. Bornstein refused to record the deed of trust, and failed to

15   make the payments, Plaintiffs applied *ex parte* to the Court, as agreed, for entry of judgment

16   on December 20, 2007.  At the hearing on the application, Mr. Bornstein's counsel, Mr. Beck,

17   pleaded with the Court to continue the hearing to allow Mr. Bornstein time to raise enough

18   money to pay Plaintiffs' claims by refinancing his residence.  The Court obliged Mr. Beck's

19   pleas and continued the hearing two times before finally entering judgment on January 2, 2008

20   when Mr. Bornstein still failed to perform.

21           45.    What Mr. Beck did not inform the Court was that during this same two

22   week period, Mr. Beck was actually assisting Mr. Bornstein in putting his property beyond the

23   reach of Mr. Bornstein's creditors, and Mr. Beck was paid tens of thousands of dollars directly

24   from the refinance and transfer of Mr. Bornstein's property.  Indeed, Plaintiffs recently

25   discovered, through documents subpoenaed from a third party, that Mr. Beck received at least

26   $65,000 from Mr. Bornstein's refinancing escrow at the same time he was falsely telling the

27   Court that Mr. Bornstein's pending escrow would pay Plaintiffs.  Mr. Beck's

28   / / /

                                    14

1  misrepresentations to the Court were designed to hinder, delay or defraud Plaintiffs from

2  collecting on their fraud claim in the Underlying Case.

3      46.    Plaintiffs are further informed and believe that Mr. Bornstein and

4  Ms. Gancevich were married in 1996. Although Ms. Gancevich filed a petition for divorce

5  and claims she separated from Mr. Bornstein, Plaintiffs are informed and believe that neither

6  Mr. Bornstein nor Ms. Gancevich has any intention of divorcing or permanently separating,

7  and that the divorce proceedings are merely a sham designed to assist Mr. Bornstein to hinder,

8  delay or defraud his creditors.

9      47.    Plaintiffs are informed and believe and based thereon allege that in

10  January 2008, Mr. Bornstein gave Ms. Gancevich approximately $175,000 to purchase real

11  property commonly known as 24020 Hovenweep Lane, Topanga, California (the "Hovenweep

12  Property") and executed a Quitclaim Deed of any of his interest in the Hovenweep Property.

13  Plaintiffs are further informed and believe that Mr. Bornstein has paid all mortgage payments

14  on the Hovenweep Property. Plaintiffs are informed and believe that Mr. Bornstein retains

15  control over the Hovenweep Property, and that his provision of funds towards the down-

16  payment and subsequent mortgage payments for the Hovenweep Property was made with the

17  actual fraudulent intention of hindering, delaying or defrauding Plaintiffs.

18      48.    Plaintiffs are further informed and believe and based thereon allege that

19  shortly after the claims of Plaintiffs' predecessor-in-interest arose, Mr. Bornstein transferred

20  assets to Defendants Olympic Land Development, Mountain Estates, Wheeler Canyon Partners

21  or Wheeler Canyon Management with the actual fraudulent intention of hindering, delaying or

22  defrauding his creditors, including Plaintiffs.

23      49.    Plaintiffs are informed and believe and based thereon allege that in

24  March 2005, Mr. Bornstein formed Olympic Land Development for the purpose of finding and

25  purchasing real property to shield Mr. Bornstein's assets from his creditors. Plaintiffs are

26  further informed and believe and based thereon allege that in April 2006, Mr. Bornstein

27  purchased approximately 634 acres of vacant land in Ventura County commonly known as

28  / / /

15

350392v1 jm 12/1/08 27 (2680-0003)

SECOND AMENDED COMPLAINT

1  4101 Wheeler Canyon Road, Santa Paula, California (the "Wheeler Canyon Property") under

2  the name of Wheeler Canyon Partners.

3         50.    Plaintiffs are informed and believe that Mr. Bornstein originally

4  purchased the property under Olympic Land Development's name, but subsequently transferred

5  that interest to Wheeler Canyon Partners.  Shortly after purchasing the Wheeler Canyon

6  Property, Mr. Bornstein recruited several individuals he knew to form another entity in order

7  to make the appearance that the land purchase was legitimate.  As part of that scheme,

8  Mr. Bornstein formed Wheeler Canyon Management in August 2006.  After forming Wheeler

9  Canyon Management, Mr. Bornstein and others incorporated Wheeler Canyon Partners.

10  Plaintiffs are informed and believe and based thereon allege that Olympic Land Development

11  and Wheeler Canyon Partners were nothing but "straw" buyers concocted by Mr. Bornstein to

12  shield his assets, and that one or more of these entities conspired with Mr. Bornstein to hinder,

13  delay or defraud his creditors.

14                          FIRST CAUSE OF ACTION

15                        (To Set Aside Fraudulent Transfers)

16       (By Plaintiffs Against Individual Defendants, Entity Defendants and Does 12 to 50)

17         51.    Plaintiffs repeat and incorporate by reference paragraphs 1 through 50

18  above as though set forth in full hereat.

19         52.    At all times mentioned herein, Plaintiffs have been the holders of certain

20  claims against Mr. Bornstein.  These claims consist of causes of action based on

21  Mr. Bornstein's fraudulent conduct and resulting judgment entered by Superior Court of the

22  State of California, County of Los Angeles, in *Anthem Ventures, etc., et al. v. Dean Bornstein,*

23  *etc., et al.,* Case No. NC038453.

24         53.    Plaintiffs are informed and believe and based thereon allege that before

25  and since Plaintiffs' claims against Mr. Bornstein arose, Mr. Bornstein was the owner and in

26  possession and control of certain real and personal property that could have been used to satisfy

27  Plaintiffs' claims against Mr. Bornstein.

28  / / /

                                16

350392v1 jm 12/1/08 27 (2680-0003)                              SECOND AMENDED COMPLAINT

54.     Plaintiffs are informed and believe and based thereon allege that Mr. Bornstein transferred property in an unknown aggregate amount, which amount Plaintiffs are informed and believe exceeds the jurisdictional minimum of this Court. Plaintiffs will amend this Second Amended Complaint to allege the amount and/or value of such transfers when such information is known by Plaintiffs, or as according to proof at trial. Plaintiffs are informed and believe and based thereon allege that the property transferred could have been used to satisfy Plaintiffs' claims against Mr. Bornstein.

55.     Plaintiffs are informed and believe and based thereon allege that the foregoing transfers were made or obligations incurred with actual intent to hinder, delay, or defraud any creditor of the debtor.

56.     Plaintiffs are informed and believe and based thereon allege that the foregoing transfers were made or obligations incurred without receiving a reasonably equivalent value in exchange for the transfers or obligations, and Mr. Bornstein either: (a) was engaged or was about to engage in a business or a transaction for which his remaining assets were unreasonably small in relation to the business or transaction or (b) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

57.     Plaintiffs are informed and believe and based thereon allege that the foregoing transfers were made or obligations incurred without receiving a reasonably equivalent value in exchange for the transfers or obligations and Mr. Bornstein was insolvent at that time or he became insolvent as a result of the transfers or obligations.

58.     Plaintiffs are informed and believe and based thereon allege that the aforementioned property was received by the Individual Defendants and/or Entity Defendants with knowledge that Mr. Bornstein intended to hinder, delay or defraud his creditors, including Plaintiffs.

59.     Plaintiffs are informed and believe and based thereon allege that through the conduct set forth above, the Individual Defendants and/or Entity Defendants agreed and conspired to engage in a fraudulent scheme to transfer Mr. Bornstein's assets to themselves and

17

350392v1 jm 12/1/08 27 (2680-0003)

SECOND AMENDED COMPLAINT

1  others, knowing or negligently disregarding the fact that such conduct violated Plaintiffs'

2  rights.

3          60.     Plaintiffs are informed and believe and based thereon allege that the

4  Individual Defendants and/or Entity Defendants agreed and knowingly and willfully conspired

5  with each other defendant to transfer Mr. Bornstein's assets in order to hinder, delay or

6  defraud Plaintiffs.  Without limitation, Plaintiffs are informed and believe and based thereon

7  allege that the Individual Defendants and/or Entity Defendants were aware of Plaintiffs' claims

8  against Mr. Bornstein and knew that Plaintiffs' claims could only be satisfied out of

9  Mr. Bornstein's transferred property.  Plaintiffs are further informed and believe and based

10 thereon allege that notwithstanding this knowledge, the Individual Defendants and/or Entity

11 Defendants intentionally, willfully, fraudulently, and maliciously did the things herein alleged

12 to defraud and oppress Plaintiffs.  Plaintiffs are therefore entitled to exemplary or punitive

13 damages.

14                         SECOND CAUSE OF ACTION

15                         (To Set Aside Fraudulent Transfer)

16        (By Plaintiffs Against Defendant Paul A. Beck, Esq. and Does 12 to 50)

17        61.     Plaintiffs repeat and incorporate by reference paragraphs 1 through 50

18 above as though set forth in full hereat.

19        62.     At all times mentioned herein, Plaintiffs have been the holders of certain

20 claims against Mr. Bornstein.  These claims consist of causes of action based on

21 Mr. Bornstein's fraudulent conduct and resulting judgment entered by Superior Court of the

22 State of California, County of Los Angeles, in *Anthem Ventures, etc., et al. v. Dean Bornstein,*

23 *etc., et al.,* Case No. NC038453.

24        63.     Plaintiffs are informed and believe and based thereon allege that in

25 January 2008, Mr. Bornstein transferred approximately $65,000 to Mr. Beck.

26        64.     Plaintiffs are informed and believe and based thereon allege that in

27 addition to the transfer alleged in the preceding paragraph, Mr. Bornstein transferred property

28 to Mr. Beck in an unknown aggregate amount, which amount Plaintiffs are informed and

                                   18